Jim J. TOZZI, et al., Plaintiffs,

v.

EPA, et al., Defendants.

No. CIV. 00–0173(RCL).

United States District Court, District of Columbia.

June 29, 2001.

Charles J. Fromm, Multinational Legal Serv., Washington, DC, for Plaintiffs.

Laurie J. Weinstein, Lydia K. Griggsby, U.S. Attys. Office, Washington, DC, Eileen T. McDonough, U.S. Dept. of Justice, for Defendants.

### Memorandum Opinion

LAMBERTH, District Judge.

Before the Court is the defendants' 12(b)(1) motion to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction, and the plaintiffs' motion for a preliminary injunction. The plaintiffs' complaint alleges that the defendants failed to comply with the procedural requirements of the Paperwork Reduction Act (hereinafter "PRA") with respect to the Information Collection Request (hereinafter "ICR"). The plaintiffs also allege

that the Office of Management and Budget's (hereinafter "OMB") approval of the ICR was inconsistent with the PRA and resulted in a rule violative of the Emergency Planning Community Right to Know Act (hereinafter "EPCRA"). The defendants maintain that this Court lacks subject matter jurisdiction to hear and decide these claims. The plaintiffs' motion for a preliminary injunction asks this Court to enjoin the EPA from requiring that one of the plaintiffs comply with the filing requirements partially at issue in this case. The Court grants the defendants' 12(b)(1) motion only as to count one of the plaintiffs' second amendment complaint. The Court denies the defendants' motion as to the plaintiffs' second count. The Court also denies the plaintiffs' motion for preliminary injunction.

## Background

### A. Statutory and Regulatory Scheme

The PRA was enacted to reduce and streamline the administrative burden created by superfluous paperwork resulting from government information collection requests. 44 U.S.C. § 3501. Another purpose of the PRA is to enhance the public benefit of the information collection process. *Id.* The cornerstone of the PRA is the ICR, which allows the OMB to control the production and flow of paperwork. Under the PRA, the OMB is granted the authority to determine the necessity of an ICR. The OMB must determine whether the ICR request is necessary to enable the agency to function and of public utility. Id. at § 3508. Pursuant to the PRA, a federal agency may not conduct an information collection request unless the OMB has approved the ICR and issued a control number. Id. at § 3507(a)(2), (3).

Where a federal agency is proceeding through rulemaking, the ICR may be contained in the proposed rule, which satisfies the agency's public comment duty under the PRA. *Id.* at § 3506(c)(2)(B). Before the notice of proposed rulemaking is published in the Federal Register, the agency must send the proposed rule, the ICR, and any OMB information requests to the OMB. *Id.* at § 3507(d)(1)(A). Thereafter, the OMB has 60 days to file comments to be included in the public record for rulemaking. Id. at § 3507(d)(1)(A). During this time, the OMB may disapprove the ICR if it deems the agency's response to be inadequate or unreasonable, determines that the final rule substantially modified the proposed ICR, or finds that the agency failed to provide information requested by the OMB. *Id.* at § 3507(d)(4). The decision of the OMB to approve or not act upon an ICR contained in an agency rule is not subject to judicial review. *Id.* at § 3507(d)(6).

The EPCRA was enacted to protect public health and the environment by arming communities with the right to know what chemicals manufacturing facilities are emitting into the air, land, and water, and by giving businesses a public relations incentive not to pollute. 42 U.S.C. § 11023. In this pursuit, the EPCRA gives the EPA substantial authority to add new chemicals to the Toxic Release Inventory (hereinafter "TRI") list. *Id.* The Act, itself, specifically requires facilities subject to the statute to complete a toxic chemical release form for each designated chemical released in excess of the threshold amount. *Id.*

### B. Facts and Procedural History

The named plaintiff, Jim J. Tozzi, is the founder and president of a regulatory consulting firm that specializes in federal information policy issues. Mr. Tozzi also participated in the drafting of the 1980 PRA predecessor (as opposed to the PRA of 1995 invoked in this case) and has filed public comments with the OMB in the past. Additional plaintiffs are the Ameri-

can Wood Preservers Institute, many of whose member companies will come within the scope of the Final TRI Rule, and Wood Protection Products, Inc., who was previously not required to report dioxins and will incur new and significant administrative costs as a result of the dioxin category added to the Final Rule.

The defendants are the EPA, the EPA Administrator, the Assistant Administrator for Administration and Resource Management, the Assistant Administrator for Enforcement and Compliance Assurance, and the OMB.

§ 313 of the EPCRA requires designated facilities using a toxic chemical in specified amounts to report the annual quantity used above a certain threshold. 42 U.S.C. § 11023. On October 29, 1999, the EPA issued a new Final Rule under § 313 of the EPCRA, *"Persistent Bioaccumulative Toxic (PBT) Chemicals; Lowering of Reporting Thresholds for Certain PBT Chemicals; Addition of Certain PBT Chemicals; Community Right to Know Toxic Chemical Reporting."* 64 Fed.Reg. 58666. The new Final Rule added dioxin and seventeen related dioxin-like compounds to the TRI list. During the notice and comment period, prior to the promulgation of the new TRI rule, the EPA sought to collect information in relation to it. Information collected in regards to the agency action has to comply with the requirements of the PRA.

The EPA initiated compliance with the PRA when the TRI Final Rule was proposed for public comment. On or about January 5, 1999, the EPA submitted an ICR to the OMB pursuant to the PRA in reference to the proposed TRI rule to be promulgated under the EPCRA. On October 29, 1999, when the Final Rule was published, the EPA submitted a final ICR to the OMB. The OMB approved the ICR on January 31, 2000 and assigned it a control number on that date.

The Final Rule, published on October 29, 1999, established what the plaintiffs claim is a "radically low" reporting threshold of 0.1 gram per year for dioxins and furans. The threshold number identifies those who must report production of 0.1 or more grams per year of the emitted listed chemicals. The Final Rule, which set the reporting requirement at 0.1 grams for total combined release of all dioxins and dioxin-like compounds in a single calendar year, went into effect in January of 2001. The Final Rule did not specify what releases had to be reported, or a methodology explaining how the volume of such reportable releases would be calculated. Information regarding these questions was also omitted from the ICR submitted to the OMB by the EPA in the Final Rule. The EPA stated in the Final Rule that it would request public comment on these issues and provide guidance on the reporting requirements at a later date. The EPA issued notice for comment in the Federal Register on June 15, 2000, and has since promulgated reporting guidelines.

On February 1, 2000, Mr. Tozzi filed a complaint in this matter, which he has twice since amended. The original complaint sought an injunction against OMB's approval of the EPA's ICR under the PRA. That complaint for injunctive relief was withdrawn on February 4, 2000, after the OMB approved the ICR. The plaintiffs filed a motion for leave to file an amended complaint, which this Court granted, seeking only declaratory relief. The first amended complaint, which was filed on March 21, 2000, retracted a motion not at issue here, added the two additional plaintiffs, the American Wood Preservers Institute and Wood Protection Products Inc, and added a third cause of action not at

issue in this motion. The first amended complaint was based on three causes of action: (1) the defendants' failure to comply with the procedural requirements of the PRA, (2) the defendants' usurpation of legislative powers in violation of the non-delegation doctrine, and (3) the defendants' adoption of a rule contrary to the statutory standard. On June 12, 2001, the plaintiffs moved for leave to file a second amended complaint, which this Court granted. The second amended complaint added a claim for injunctive relief, withdrew the non-delegation doctrine claim in light of the Supreme Court's decision in *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 121 S.Ct. 903, 912–914, 149 L.Ed.2d 1 (2001), and clarified the cause of action based on § 313 of the EPCRA (failure to adopt a "toxic equivalent (hereinafter 'TEQ')" methodology as arbitrary and capricious). The second amended complaint seeks declaratory and injunctive relief based on two causes of action: (1) the defendant's violation the PRA, and (2) the EPA's arbitrary and capricious failure to satisfy the statutory requirements for establishing a chemical reporting threshold under § 313 of the EPCRA.

On February 5, 2001, the defendants moved to dismiss the plaintiffs' claims for lack of subject matter jurisdiction. The parties' cross summary judgement motions were deferred by order of this Court until the resolution of the defendants' motion to dismiss.

On June 15, 2001, the plaintiffs filed a motion for a preliminary injunction. The plaintiffs seek to enjoin the EPA from requiring one of the plaintiffs to submit "Form R" as required by the dioxin reporting requirement pursuant to the new TRI dioxin Rule. The plaintiffs acknowledge that Wood Protection Products Inc. may have released dioxin and dioxin-like compounds during the year 2000 in excess of the 0.1 gram/year threshold, falling, as such, within the scope of the new TRI rule. Pursuant to the TRI rule, Wood Protection Products Inc., must submit a Form R report detailing the releases by July 1, 2001, unless this Court grants the requested injunctive relief prior to that date.

## Analysis

### A. Jurisdiction and Venue

Whether this Court has subject matter jurisdiction to hear these claims is at the core of this case. Assuming for the moment that this Court does have subject matter jurisdiction, this Court would possess federal question jurisdiction pursuant to 28 U.S.C. § 1331, and have venue pursuant to 28 U.S.C. § 1391.

### B. Applicable Procedural Law and Standard of Review

 Under Article III of the United States Constitution, federal courts have limited jurisdiction and may only exercise jurisdiction granted to them by Congress. *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Pursuant to a 12(b)(1) motion for dismissal for lack of subject matter jurisdiction, a case will be dismissed if the court lacks jurisdiction to hear and decide the dispute. Fed. Rule Civ. Pro. 12(b)(1). A subject matter jurisdiction challenge under 12(b)(1) may be technical or substantive. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Technically, the pleader must formally aver the basis of the federal court's jurisdiction. *Gibbs v. Buck*, 307 U.S. 66, 71, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). Failure to formally aver exposes the pleading to dismissal. *Id.* at 71. Substantively, the pleader may have formally averred; but if the actual facts and allegations belie the averment, the case's dismissal may be compelled. *Id.* at 71. The party invoking the court's jurisdiction bears the burden of

proving the accuracy of the subject matter averment. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). In its evaluation as to whether subject matter jurisdiction exists, the court must construe the complaint liberally, accept all uncontroverted, well-pleaded facts as true, and attribute all reasonable inferences to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court must view the allegation as a whole, and a conclusory averment of subject matter jurisdiction negated by other allegations in the pleading should result in dismissal. *Gibbs* at 71. To avoid exposure to dismissal, subject matter jurisdiction must have existed on the date that the lawsuit was filed. *Rosa v. Resolution Trust Corp.,* 938 F.2d 383. Generally, the court will permit a party to amend unless it is clear that subject matter jurisdiction cannot be averred. *Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589, 595 (7th Cir.1992). The parties may produce affidavits and other materials to support their position on subject matter jurisdiction, and the court is free to weigh such evidence in assessing its power to decide the case. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir.1995) A dismissal for lack of subject matter jurisdiction is usually not a decision on merits, and will not preclude the plaintiff from instituting the claim in a court that may properly hear the dispute. *Leaf* at 595.

▮ If this Court were to decide that it had subject matter jurisdiction, it would have to review the EPA's and OMB's action under the arbitrary and capricious standard of the APA, and pursuant to common law *Chevron* deference. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) Pursuant to the APA,

in relevant part, a court may set aside an agency act, finding, or conclusion of law if it is found to be arbitrary and capricious, or otherwise not in accordance with law. 5 U.S.C. § 706.

The complaint and motion to dismiss before the Court involve the agency action by the EPA and determination by the OMB. Agency determinations of law and fact are accorded deference under. *Id.* Under *Chevron,* if Congressional intent is clear then both the agency and the reviewing court are bound by it. However, if the statute at issue is ambiguous on the point of contention, then the reviewing court must give deference to a reasonable agency interpretation of it. Reasonable interpretation need not be the best interpretation to suffice. Reasonableness is met as long as the agency interpretation is capable of being construed as rational and consistent with the statute. *NLRB v. United Food and Commercial Workers Union,* 484 U.S. 112, 123, 129, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987).

Invoking the *Federal Declaratory Judgment Act,* the plaintiffs maintain that this Court is compelled to award the declaration that they seek because there is (1) a substantial controversy between the adverse parties, (2) of sufficient immediacy to warrant a judicial declaration of rights, (3) that will exist until corrected, (4) is fixed and definite, (5) for which the defendants have failed to perform their legal duties, and (6) the outcome of which the plaintiffs have a personal stake in. 28 U.S.C. § 2201.

▮ Pursuant to Federal Rule of Civil Procedure 65(a), in order to prevail on a preliminary injunction motion the moving party must show that: (a) there is a substantial likelihood of success on the merits, (b) there will be irreparable harm if a preliminary injunction is not granted, (c) the harm to the movant if a prelimi-

nary injunction is not granted outweighs any harm to the non-movants if the preliminary injunction is granted, and (d) granting of a preliminary injunction would further public interest. The four requirements are requisite to granting a preliminary injunction. But, they are to be weighted on a sliding scale, and the prevailing trend is to grant the relief requested if one requisite has a relatively good showing even though other requisites may not be as strong or clearly demonstrated.

## C. The Plaintiffs' Complaint

■ In regards to the jurisdictional challenge, the plaintiffs maintain that this Court has jurisdiction over their claims because the PRA judicial review bar is inapplicable, the agency action is final, and the plaintiffs have exhausted all available administrative remedies. The plaintiffs maintain that the EPA's failure to comply with the PRA, by failing to submit a complete ICR to the OMB, the OMB's approval of the ICR, and the EPA's publication of the Final Rule constitute final agency action, which should be reviewed under the arbitrary and capricious standard of the APA.

Invoking the private suit provision of the APA, the plaintiffs' specific causes of action are that: (a) the EPA failed to comply with the procedural requirements of the PRA, and (b) in failing to employ TEQ methodology in establishing the reporting threshold for dioxin and dioxin-like compounds the EPA violated the EPCRA and acted arbitrarily and capriciously in violation of the APA. The plaintiffs maintain that the EPA's failure to meet the statutory standard prescribed in § 313 of the EPCRA for setting TRI chemical reporting not only violates that statute and the APA, but also renders the plaintiffs aggrieved parties because of the harm

caused by the burdensome and unjustified reporting requirement.

Aggregation of the plaintiffs' original and amended complaints is reducible to the following four contentions. First, the plaintiffs maintain that the ICR approval is not valid because the EPA failed to comply with the procedures of the PRA in relation to the TRI reporting rules. The plaintiffs maintain that the ICR submitted by the EPA lacked sufficient information about the proposed collection of information to enable intelligent public comments. They also claim that the timing of the EPA's ICR submission to the OMB was insufficient to satisfy the requisite public notice and comment period, disallowing them effective opportunity to enter into the debate to the extent provided under the PRA.

Second, the plaintiffs maintain that the OMB's approval of the EPA's request for a control number under the PRA is not in accordance with law because the EPA did not submit a complete clearance package and had not complied with other procedural prerequisites to OMB approval. The plaintiffs claim that the ICR did not contain information sufficient enough to give the OMB the statutory ability to assess whether or not the ICR complied with the purpose, need, practical utility, feasibility, accuracy, and appropriateness requirements requisite to OMB approval of an ICR. The plaintiffs also claim that it is a violation of the PRA for the EPA to seek an OMB control number, and for the OMB to approve the ICR, when the EPA had not made the reporting requirements available to the public for comment.

Third, the plaintiffs maintain that the EPA did not consider the correct factors in setting the reporting threshold. Relatedly, the plaintiffs' fourth contention is that the EPA acted arbitrarily and capriciously by refusing to employ the same

TEQ methodology for expression of dioxin and dioxin-like compound releases under the Final Rule as it has used in other contexts. The plaintiffs claim that § 313 of the EPCRA is violated because of the EPA's failure to adopt TEQ methodology in expressing releases of dioxin and dioxin-like compounds. The plaintiffs claim that the EPA violated the EPCRA when failing to follow the routine and internationally consistent TEQ approach to conduct risk assessments in setting the dioxin release threshold. The plaintiffs maintain the EPA has adopted TEQ methodology in almost every other similar instance and that its failure to do so in this TRI Final Rule, without a reasoned explanation, runs afoul of the arbitrary and capricious standard under the APA. The plaintiffs also claim that the Final Rule requires a separate reporting for benzo(g,h,i)perylene, but is silent as to the reporting requirements for this chemical in so far as it interacts with creosote, and as such imports uncertainty and additional administrative costs on TRI designated parties.

### D. The Defendants' 12(b)(1) Motion to Dismiss

The defendants' central argument is that this Court lacks jurisdiction to hear and decide the claims raised in the plaintiffs' complaint. The defendants maintain that as a sovereign, the United States cannot be sued without its consent. *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Defendants note that waivers of sovereign immunity must be statutorily explicit and cannot be implied. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The defendants contend that the PRA's bar of judicial review applies to the instant case. The defendants argue that 44 U.S.C. § 3507(d)(6)'s statement that "[t]he decision by the [OMB] to approve or not act upon a collec-

tion of information contained in an agency rule shall not be subject to review" acts as a clear statement of intent, namely that Congress did not intend to waive sovereign immunity with regards to the OMB's assessment and action upon an ICR. The only other relief that a plaintiff could seek under the Act is the "public protection" provision under 44 U.S.C. § 3512. But, § 3512 is only a defense to enforcement actions. *Saco River Cellular, Inc. v. FCC*, 133 F.3d 25 (D.C.Cir.1998). Otherwise, the Act has no provision for a private right of action for alleged violation of the Act. The defendants also assert that this proposition is supported by legislative history, asserting that it evinces that congressional intent to preclude injunctive relief as a remedy, leaving only the option of § 3512 at the enforcement stage. See 26 Cong. Record at 30192. Furthermore, courts that have addressed the issue have consistently held that there is not a private right of action under the PRA. *Council on Regulatory and Information Management, Inc. v. United States Department of Labor*, 1993 WL 544303 (D.D.C.1993); *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 844 (9th Cir.1999).

The defendants also argue that the plaintiffs cannot subvert the PRA bar on judicial review by way of the APA for two reasons. The APA is a general waiver of sovereign immunity in regards to judicial review subject to two qualifications. The APA's sovereign immunity waiver does not apply where a statute has explicitly precluded judicial review. 5 U.S.C. § 701(a)(1); *Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). As such, the PRA's explicit bar of judicial review of OMB ICR approval decisions precludes the plaintiffs' suit. The defendants maintain that because of this ban the plaintiffs cannot ask this court to review the OMB's determination or the

ICR's consistency with the PRA after OMB determination has been made. The second qualification is that the APA waiver of sovereign immunity that makes agency action amenable to private suits only applies to "final" agency action. The defendants maintain that the EPA's submission of the ICR to the OMB does not constitute final agency action. The defendants point to the Supreme Court decision, *Bennett v. Spear*, in which the Court made the following statement regarding final agency action, "the action must mark the consummation of the agency's decision-making process—it must not be merely tentative or interlocutory in nature . . . it must be one by which rights or obligations have been determined or from which legal consequences will flow." 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). In this case the defendants contend that the plaintiffs have not suffered penalties from which legal consequences will flow, and still have other remedial avenues including judicial review of future penalties that may be incurred and judicial review of the Final Agency Rule under the APA either on the Rule, or during the enforcement phase. The defendants maintain that the plaintiffs have not met the APA prerequisites to judicial review, namely that a judicial review not be statutorily barred and that the agency action be final.

## E. The Plaintiffs' Responses to the Defendants' 12(b)(1) Motion to Dismiss

The plaintiffs' responses to the defendants' motion proceed on very technical statutory grounds. First, the plaintiffs maintain that the APA has a very strong presumption of judicial review of agency actions. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). The plaintiffs maintain that where there is substantial doubt about Congressional intent in a specific circumstance, the presumption in favor of judicial review is controlling. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). The D.C. Circuit follows the Supreme Court's support of this presumption. *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C.Cir.1979).

Second, the plaintiffs maintain that the PRA's judicial review bar applies only to OMB approvals of or non-actions on ICRs, and does not apply to procedural violations that occur prior to OMB approval of an ICR. The plaintiffs maintain that the PRA has three distinct procedural stages before the EPA can conduct or sponsor an ICR: (1) the EPA must submit a complete ICR to the OMB and publish notice in the Federal Register in time sufficient to give the public a meaningful opportunity to comment on the proposed ICR, (2) the EPA may not collect information unless the OMB approves an ICR or ICR approval can be inferred, and the OMB can not assign a control number to an ICR unless the EPA has first complied with its duties under § 3507(a)(1), and (3) the EPA cannot act on an ICR unless the it has obtained a control number from the OMB. 44 U.S.C. § 3507(a)(1), (a)(2), (a)(3). The plaintiffs maintain that because the judicial bar is written only to apply to OMB approval actions, the statute cannot be read to also apply to prior procedural requirements, especially in light of the presumption of judicial reviewability under the APA. Therefore, the plaintiffs maintain that their action is limited to a request for judicial review of the EPA's violation of steps one and two, failure to provide adequate opportunity for public notice, and failure of the EPA to file a complete ICR and the violation of the OMB in assigning a control number to a procedurally defi-

cient ICR, not the OMB's ultimate approval of the ICR. The plaintiffs maintain that the defendants concede the point that the judicial bar only applies OMB approvals and not the issuance of a control number, which is a separate regulatory step.

Third, the plaintiffs refute the defendants' categorical statement that the PRA's judicial bar applies to any private causes of action for alleged violations of the PRA. The plaintiffs maintain that such a proposition is in direct conflict with actions undertaken by both the D.C. Circuit and the United States Supreme Court in validating and reviewing alleged PRA violations involving the scope of the OMB's authority. *Dole v. United Steelworkers of America*, 494 U.S. 26, 110 S.Ct. 929, 108 L.Ed.2d 23 (U.S.1990); *Action Alliance of Senior Citizens of Greater Philadelphia v. Sullivan*, 930 F.2d 77 (D.C.Cir.), cert. denied, 502 U.S. 938, 112 S.Ct. 371, 116 L.Ed.2d 323 (1991).

Fourth, the plaintiffs maintain that the judicial review bar of the PRA only applies to substantive OMB decisions on the merits and not the OMB's exercise of discretion before it has authority to act. The plaintiffs rely on the administrative law distinction between challenging an agency's jurisdiction to exercise discretion and challenging the manner in which the agency exercises that discretion, the latter not being subject to judicial review where barred by Congress, the former being amenable to judicial review where the agency's scope of authority is at issue. *Bowen* at 675, 106 S.Ct. 2133.

Fifth, the plaintiffs maintain that the EPA attempted to circumvent public and OMB scrutiny, and as such the PRA, by submitting an incomplete ICR. Sixth, the plaintiffs argue that the ICR cannot be considered "contained" in an agency rule, and subject to judicial review as such, because critical aspects (i.e. the reporting requirements and methodology) of the ICR were not contained in it, but were noticed to be contained in some future agency "guidance" rule.

Seventh, the plaintiffs maintain that historical application of judicial review will overcome a judicial review bar under any of the following four circumstances. Judicial review will be allowed where an agency violates procedural or statutory rights of affected parties in makings its substantive decision, when the mechanism by which the agency makes its substantive decision is challenged, where no other adequate judicial-type remedies are available to address the plaintiffs' grievances, or when the agency acts in excess of its judicial authority. *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). For the aforementioned reasons, the plaintiffs maintain that all of these conditions exist in the instant case.

## F. The Defendants' Reply to the Plaintiffs Response

First, the defendants counter that the plaintiffs' arguments are not consistent with statutory language because the statute makes no distinction between the judicial review bar of an actual agency decision and the steps leading to that decision. The defendants maintain that all actions taken by the OMB are substantively decisional, and as such incorporated into the final OMB decision to "approve or not act" on an ICR. The defendants maintain that the two cases cited by the plaintiffs in support of this contention are inapplicable because both dealt with whether the PRA granted the OMB the authority to disapprove certain regulatory agency actions, not to approve or not act upon an agency decision such as an ICR. In this case, there is not dispute as to OMB jurisdiction.

Second, the defendants maintain that the plaintiffs' claims cannot separate actions against the EPA from those against the OMB because the judicial review bar provision of the PRA applies to both conjunctively. The defendants maintain that the plaintiffs' PRA claims against the EPA are subsumed within their challenge to the OMB's approval decision. And, to the extent that the EPA and OMB's actions can be divorced from one another, the EPA's actions are still not reviewable because they do not constitute final agency action, which is necessary to partially activate the private suit provision of the APA.

Third, in response to the plaintiffs' contention that even where Congress has precluded judicial review, collateral review is still available to correct procedural and statutory violations. The defendants maintain that this exception does not apply to circumstances, similar to those in the instant case, where the statute is not procedurally violated on its face, and where there is still adequate opportunity for judicial review. The defendants maintain that *Leedom* has to be construed narrowly, and that its application cannot be justified in less than extraordinary cases where there is merely a dispute over statutory interpretation or findings of fact. *McBryde v. Committee to Review Council Conduct and Disability Orders of Judicial Conference*, 83 F.Supp.2d 135, 158–59 (D.D.C. 1999).

Fourth, the defendants maintain that the APA presumption in favor of judicial review does not apply where Congress has statutorily and explicitly barred judicial review, as is the case with the PRA. *Stockman v. Federal Election Com'n*, 138 F.3d 144, 152 (5th Cir.1998) (quoting *Heckler v. Chaney*, 470 U.S. 821, 829, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)). The defendants dismiss the remainder of the cases cited by the plaintiffs as inapplicable or distinguishable.

### G. The Plaintiffs' Motion for Preliminary Injunction

The plaintiffs assert that they will prevail on the merits based on their aforementioned contentions. They also maintain that the EPA's new reporting requirement will cause them imminent irreparable harm because of the stigma that they will bear for being listed as a "dioxin polluter" on the EPA's Internet website, a harm that cannot be remedied later by judicial intervention. The plaintiffs maintain that if the ICR had been procedurally sufficient they and other members of the public would have had an effective opportunity to weigh in on the debate and effect the outcome of the Final Rule in a way that would not cause the plaintiffs imminent irreparable harm. They also maintain that the balance of the harms favors injunctive relief. The plaintiffs argued that the aforementioned harm to them has no countervailing EPA counterpart. Because, of the two parties, only the plaintiffs will be hurt, they posit that issuance of a preliminary injunction weighs in their favor. Lastly, the plaintiffs maintain that issuance of the preliminary injunction is in the public's interest. The plaintiffs argue that the public is served and their confidence in government fostered when agencies are forced to follow the guidelines that rein in the considerable amount of power that they wield. Furthermore, they maintain that lax procedural standards could be counterproductive to the public health and safety goals of the EPCRA.

### H. The Defendants' Response to the Plaintiffs' PI Motion

The defendants maintain that the plaintiffs are not likely to succeed on the merits because this Court does not have jurisdic-

tion to hear and decide the issues raised by the plaintiffs for the reasons articulated in the defendants' motion to dismiss and subsequent filings in this case. The defendants argue that the plaintiffs' claim that being listed on the EPA's website as a dioxin polluter will result in public stigma that will result in lost revenue does not demonstrate irreparable harm. Assuming that the website listing will cause monetary loss, the plaintiffs have not shown that this loss would be unrecoverable. Since recoverable economic loss cannot constitute irreparable harm, *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the plaintiffs have failed to make their showing. The defendants also argue that economic loss does not constitute irreparable harm if the loss does not "threaten[ ] the very existence of the movant's business." *Varicon Intern. v. Office of Personnel Management*, 934 F.Supp. 440, 447–448 (D.D.C.1996). In addition, to the extent that the website listing post unfavorable information about the plaintiffs, the website also lists information that would allow the public the ability to put the toxicity rating in perspective. The defendants also maintain that the balancing of interests as between the parties and in relation to the public weighs against granting the preliminary injunction, noting the unlikeliness of the plaintiffs prevailing on the merits, the administrative impediment that the injunction would cause, and the fact that granting the injunction is actually contrary to the public interest because information regarding toxins would be withheld.

## I. Disposition

The Court dismisses the plaintiffs' first cause of action pursuant to Federal Rule of Civil Procedure 12(b)(1). The plaintiffs' first cause of action asserts that the EPA failed to comply with procedural requirements of the PRA by filing an incomplete IRC. The Court cannot entertain this claim because it is bound by the judicial review bar provision of the PRA. The Court does not find the plaintiffs' parsing of statutory language persuasive enough to establish a judicially palatable distinction between the procedural steps leading to the OMB's decision to approve an ICR and its actual approval decision. As such, this Court finds that the PRA's explicit statutory bar prohibiting judicial review of OMB's ICR approval decisions renders this matter not judicially reviewable. Consequently, this Court grants the defendants' 12(b)(1) motion to dismiss the plaintiffs' first cause of action for lack of subject matter jurisdiction.

The essence of the plaintiffs' first count is that the alleged procedural violations prevent the EPA's submission from being statutorily sufficient to constitute an adequate ICR so as to trigger the judicial review bar that otherwise applies to OMB ICR approval decisions. The plaintiffs' supporting statutory arguments are very technical, involve a great deal of parsing, and are ultimately unpersuasive.

■■■ The role of courts withstanding a statutorily explicit bar on judicial review is very clear. As stated in *FDIC v. Meyer*, "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (quoting *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). In *United States v. Mitchell*, the Supreme Court reemphasized the longstanding rule that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). In the

instant case, § 3507(d)(6) of the PRA states "[t]he decision by the Director [of the OMB] to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review." § 3507(d)(6) is nothing less than an explicit statement of clear Congressional intent that, under the PRA, OMB ICR approval decisions are unequivocally not subject to judicial review. Such an explicit statutory command warrants double deference pursuant to the aforementioned common law sovereign immunity doctrine, as well as the common law doctrine of *Chevron*.

■■■■ Analysis under *Chevron* can be a two step process. First, a court must determine whether Congressional intent is clear. Second, if Congressional intent is not clear then a court should defer to reasonable agency interpretation. But, where, under step-one, Congressional intent is manifestly clear, a court is strictly bound by it, even if Congress' intent is to strip the Court of jurisdiction that it would otherwise have. This is precisely the circumstance of the instant case, by virtue of § 3507(d)(6), and no amount of statutory parsing or backdoor foray invoking the private suit provision of the APA can overcome such statutory clarity and command.

■■■■ The Court finds that the plaintiffs' second cause of action, that the EPA's failure to employ TEQ methodology in establishing the reporting threshold for dioxin and dioxin-like compounds was arbitrary and capricious, is not amenable to 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The plaintiffs' second cause of action is distinct and independent from the PRA-based first cause of action. The plaintiffs' second cause of action, in its substance, does not implicate the PRA, and, as such, does not trigger the judicial review bar of the PRA. Without application of this reviewability bar there is noth-

ing stripping this Court of subject matter jurisdiction over the federal question implicated by the plaintiffs' second cause of action. Because the plaintiffs' second cause of action is still before the Court, the plaintiffs' request for a preliminary injunction must be addressed.

■■■■ Pursuant to Federal Rule of Civil Procedure 65(a), in order to prevail on a preliminary injunction motion the moving party must show that: (a) there is a substantial likelihood of success on the merits, (b) there will be irreparable harm if a preliminary injunction is not granted, (c) the harm to the movant if a preliminary injunction is not granted outweighs any harm to the non-movants if the preliminary injunction is granted, and (d) granting of a preliminary injunction would further public interest. The four requirements are requisite to granting a preliminary injunction. But, they are to be weighted on a sliding scale, and the prevailing trend is to grant the relief requested if one requisite has a relatively good showing even though other requisites may not be as strong or clearly demonstrated.

First, the plaintiffs have not demonstrated likelihood of success on the merits. The plaintiffs' second claim, would likely not survive arbitrary and capricious review because the Court would be compelled to dispose of it pursuant to *Chevron* deference. In *United States v. Mead,* the United States Supreme Court's latest exposition on *Chevron* deference, the Court stated that:

"administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was

promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent." —— U.S. ——, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

Statutory delegation to the EPA is found at 42 U.S.C. § 11023, EPCRA, which states, in relevant part, that:

"The Administrator may by rule add or delete a chemical from the list described in subsection (c) of this section at any time ... A chemical may be added if the Administrator determines, in his judgment, that there is sufficient evidence to establish any one of the following ..." Id at (d)(1)(2).

Explaining the purpose and the authority delegated by Congress to the EPA to give meaning to the EPCRA, President Clinton stated that:

"The laws provide the Environmental Protection Agency with substantial authority to add to the Toxics Release Inventory under EPCRA: (1) new chemicals; (2) new classes of industrial facilities; and (3) additional types of information concerning toxic chemical use at facilities." Id. (Memoranda of the President, Aug. 8, 1995, 60 F.R. 41791).

These common law and statutory statements comport directly with the easiest case of agency activity that *Chevron* was intended to accord deference to. Before the Court is a matter in which the EPA is implementing a reporting requirement, the TRI 0.1 gram/year threshold, pursuant to express and substantial Congressional authority to do so. The fact that the agency may have calculated the threshold in a manner that the plaintiffs find displeasing or even unwise does not give this Court authority to superimpose its own or the plaintiffs' gloss on the threshold calculation.

Even if one were to argue that the delegation of Congressional authority is not clear in the instant case, the *Mead* Court's revival of the *Skidmore* doctrine defers to agency interpretations based on even ambiguous delegations of authority. The *Mead* Court stated that "*Chevron* did nothing to eliminate *Skidmore's* holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *Mead,* 121 S.Ct. at 2186 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). So to the extent that the plaintiffs argue that the EPA's interpretative guidelines for calculating dioxin release are arbitrary and capricious, there is nothing before the Court demonstrating that the EPA's dioxin calculation is unreasonable, or arbitrary and capricious as such. For these reasons, the plaintiffs are not likely to prevail on their second cause of action.

Second, denial of injunctive relief will not likely cause the plaintiffs irreparable harm. The monetary harm that may be incurred by the plaintiffs by being listed as a dioxin polluter on the EPA's website is speculative. Speculative harm is not sufficient to constitute irreparable harm. As noted in *Wieck v. Sterenbuch,* "Injunction[s] should not be issued unless threat of injury is imminent and well-founded, and unless injury itself would be incapable of being redressed after final hearing on merits." 350 A.2d 384 (D.C.App.1976). Furthermore, as noted by the defendants, the same website that contains the dioxin polluter listing also contains information that allows members of the public to put a

listed company's dioxin release number in perspective. Also, the economic loss that the plaintiffs might incur would not likely be enough to threaten the livelihood of their business, and as such does not constitute irreparable harm in this jurisdiction. *Varicon Intern.* at 447–448. Third, in balancing interest between the parties, the administrative impediment that would be caused by the injunction is as great or greater than the speculative reputational and economic loss that the plaintiffs may encounter. Fourth, the balancing of interest in relation to the public interest weighs in favor of providing information to the public about toxic releases. For these reasons, this Court denies the plaintiffs' motion for a preliminary injunction.

### Conclusion

For the aforementioned reasons, this Court grants the defendants' motion for dismissal for lack of subject matter jurisdiction, only to the plaintiffs' first cause of action. Because the defendants have not responded to the plaintiffs' second cause of action in a manner consistent with this Court's memorandum opinion, the defendants will have ten days from the date of the accompanying Order to file a response to the plaintiffs' second cause of action. This Court, for the aforementioned reasons, also denies the plaintiffs' preliminary injunction motion.

### ORDER

Upon consideration of the defendants' motion for dismissal for lack of subject matter jurisdiction and the plaintiffs' motion for a preliminary injunction, and the pleadings herein, it is, for the reasons stated in the accompanying memorandum opinion,

ORDERED that the defendants' motion for dismissal be and hereby is GRANTED only as to the plaintiffs' first cause of action, and that the plaintiffs' preliminary injunction motion be and hereby is Denied. The plaintiffs' second cause of action remains before the Court, and the defendants have ten days after the date of this Order within which to file a response. The plaintiffs' first cause of action shall stand dismissed with prejudice.

SO ORDERED.