Affirmed and Opinion filed May 22, 2003









Affirmed and Opinion filed May
22, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00655-CR

_______________

 

CLAYTON HARPER TAPP, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On
Appeal from the County Criminal Court at Law No. 7

Harris County, Texas

Trial
Court Cause No. 1089953

                                                                                                                                               


 

  O P I N I O N

 

Clayton
Harper Tapp appeals a conviction for Driving While Intoxicated on the grounds that
the trial court erred in denying his motion to suppress his blood test results
because: (1) the disclosure of the results was not obtained in compliance with
the grand jury subpoena process and the results were admitted in violation of
article 38.23 of the Code of Criminal Procedure and in violation of the privacy
regulations promulgated pursuant to the Health Insurance Portability and
Accountability Act of 1996 (AHIPAA@), and (2) the use of a grand jury subpoena to obtain the
results constituted an unreasonable search and seizure in violation of the
Fourth Amendment of the United States Constitution and article I, section 9 of
the Texas Constitution.  We affirm.

                                            Factual
and Procedural Background








On
November 10, 2001, appellant was involved in a motorcycle accident and taken to
Memorial Hermann Hospital.  At the
hospital, Deputy Cantwell noted that appellant had a strong odor of alcohol on
his breath and slurred speech.  According
to Deputy Cantwell, appellant admitted to drinking eight beers and a couple of
shots before driving his motorcycle.  On
November 16, 2001, Deputy Cantwell obtained a grand jury subpoena to obtain
appellant=s medical records from the
hospital.  The blood test results
revealed that appellant had .18% alcohol in his blood stream.  At the time the subpoena was issued, there
was no criminal proceeding pending against appellant.  On November 30, 2001, appellant was charged
with driving while intoxicated.   

Appellant
filed a motion to suppress the blood test results.  The trial court held a hearing but denied his
motion to suppress.  Thereafter,
appellant pleaded guilty to the misdemeanor offense of driving while
intoxicated.  Pursuant to a plea
agreement, the trial court assessed appellant=s punishment at 180 days confinement
in the Harris County Jail, probated for one year, and a fine of $400.  Appellant appeals his conviction raising four
issues.      

                                                                    Argument

                                                                     Standing         

In
his first issue, appellant argues the trial court erred in denying his motion
to suppress his blood test results because the disclosure of the results was
not obtained in compliance with the grand jury subpoena process and the results
were admitted in violation of article 38.23 of the Code of Criminal Procedure.[1]  Specifically, appellant claims (1) the grand
jury subpoena was a sham and not legitimate as there was no actual grand jury
investigation pending in this case, (2) the Code of Criminal Procedure does not
provide for the issuance of a grand jury subpoena duces tecum, (3) the
State failed to apply to the district court for a subpoena duces tecum,
and (4) the State failed to properly return appellant=s medical records to the foreman of
the grand jury or the District Clerk. 








Recently,
the First Court of Appeals addressed a similar issue in Garcia v. State,
95 S.W.3d 522 (Tex. App.CHouston [1st Dist.] 2002, no pet.).  The facts of Garcia are very similar
to the facts of the present case.  See
id. at 523.  Specifically, in Garcia,
the defendant=s blood was drawn at a hospital for
purposes of medical treatment after he had been involved in a traffic
accident.  Id.  Later, pursuant to a grand jury subpoena, an
investigating officer obtained the defendant=s medical records.  Id. 
No criminal proceedings were pending against the defendant at the time
the subpoena was issued and charges against him were initiated only after his
medical records were obtained by subpoena. 
Id.  After the trial court
overruled his motion to suppress evidence of the blood-alcohol level, the
defendant pleaded no contest.  Id.

Relying
on the Court of Criminal Appeals= holding in Hardy[2]
and its earlier decision in Dickerson,[3]
the court held that, because a defendant does not have any constitutional or
statutory reasonable expectation of privacy in blood-alcohol test results
obtained for medical purposes following an accident, he does not have standing
to complain of any defects in the grand jury subpoena process.  Id. at 526-27.  Agreeing with our sister court, we conclude
that appellant lacks standing to complain that his test results were not
obtained in compliance with the grand jury subpoena process.  Thus, we overrule appellant=s first issue. 

In
his fourth issue, appellant asserts that the trial court erroneously denied his
motion to suppress his blood test results because using a grand jury subpoena
to obtain the results, absent a showing of probable cause or exigent
circumstances, constituted an unreasonable search and seizure and violated
article 1, section 9 of the Texas Constitution.








In
State v. Hardy, the Court of Criminal Appeals held that there is no
Fourth Amendment reasonable expectation of privacy that protects blood-alcohol
test results from tests taken by hospital personnel solely for medical purposes
after a traffic accident.  963 S.W.2d
516, 527 (Tex. Crim. App. 1997).  Later,
the Court further held that article 1, section 9 of the Texas Constitution does
not provide more but rather less protection than the Fourth Amendment of the
United States Constitution.  Hulit v.
State, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998).  Therefore, we conclude that the holding in Hardy
can also be extended to appellant=s claim under the Texas
Constitution.  See id.; see
also Garcia, 95 S.W.3d at 526 n.1; Thurman v. State, 861 S.W.2d 96,
100 (Tex. App.CHouston [1st Dist.] 1993, no pet.).

We
thus hold that, because there is no expectation of privacy in one=s blood-alcohol test results under
section 9 of our Bill of Rights, appellant lacks standing to assert that using
a grand jury subpoena to obtain his blood results constituted an unreasonable
search and seizure.  We overrule
appellant=s fourth issue.

                                                                     Preemption








Next,
appellant contends that we must decide whether the privacy regulations,
promulgated by the Secretary of Health and Human Services pursuant to the
Health Insurance Portability and Accountability Act of 1996 (AHIPPAA@), overruled the Court of Criminal
Appeals= decision in State v. Hardy,
963 S.W.2d 516.  Arguing that Hardy
is preempted by federal regulations, appellant asserts that the trial court
erred in denying his motion to suppress his blood test results.  In particular, appellant claims in his second
issue that the results should have been suppressed under article 38.23(a)
because the State failed to comply with the grand jury subpoena process and
thus improperly obtained his results in violation of the prescribed
regulations.[4]  Additionally, in his third issue, appellant
argues that, with the restoration of a federal privacy right in medical
records, the State=s failure to obtain his test results pursuant to a valid
warrant or a recognized warrant exception constituted an unreasonable search
and seizure violating the Fourth Amendment.

On
August 21, 1996, Congress enacted HIPAA to Aimprove portability and continuity of
health insurance coverage in the group and individual markets, to combat waste,
fraud, and abuse in health care and health care delivery.@ 
Pub. L. No. 104-191, 110 Stat. 1936 (1996).  Congress also instructed the Secretary of
Health and Human Services to promulgate Afinal regulations@ containing Astandards with respect to the privacy
of individually identifiable health information@ should Congress fail to enact such
privacy standards within 36 months of the HIPAA enactment.  110 Stat. 2033-34.

On
February 13, 2001, the Secretary promulgated final regulations that restrict
and define the ability of covered entities, i.e. health plans, health
care clearinghouses, and health care providers,[5]
to divulge patient medical records. 
However, the initial compliance date for covered entities to comply with
these privacy standards was April 14, 2003. 
45 C.F.R. '164.534 (2002).  Thus,
a hospital, defined as a health care provider,[6]
was only required to comply with the regulations after April 14, 2003.  In that regard, any action taken during the
regulations= pre-enforcement stage cannot
constitute a violation of the regulations as compliance is not required or
enforceable.  See Ass=n of Am. Physicians & Surgeons,
Inc. v. United States Dep=t of Human Health & Servs., 224 F. Supp. 2d 1115, 1123-24 (S.D.
Tex. 2002) (holding that plaintiffs= action is premature because actual
compliance with the regulations is not mandated until April 14, 2003, and
finding that adjudicating plaintiffs= claims in the pre-enforcement stage
poses a risk of rendering an impermissible advisory opinion).  Additionally, any alleged preemption argument
raised at the regulations= pre-enforcement stage is premature.  See id.  








In
this case, compliance with the promulgated regulations was not yet
required.  See 45 C.F.R. '164.534.  Consequently, appellant=s preemption argument is without
merit in that any compliance with the regulations was not even mandated.  See Ass=n of Am. Physicians & Surgeons,
Inc., 224 F.
Supp. 2d at 1123-24.  Therefore, we
cannot agree with appellant that the promulgated regulations, while still in
their pre-enforcement stage, in effect overruled Hardy.  Moreover, absent any guidance or instructions
to the contrary from the Court of Criminal Appeals, we are compelled to follow
existing case law.  We thus adhere to
standing precedent as set out in Hardy and its progeny and proceed to
address appellant=s second and third issue in accordance therewith.

As
we discussed earlier in this opinion,[7]
appellant does not have a Fourth Amendment reasonable expectation of privacy
that protects blood-alcohol test results from tests taken by hospital personnel
solely for medical purposes after a traffic accident.  Hardy, 963 S.W.2d at 527.  Because appellant thus lacks standing to
complain that his test results were obtained in violation of the Fourth
Amendment, we overrule his third issue.  See
id.; see also Garcia, 95 S.W.3d at 526-27.  Furthermore, as noted previously,[8]
relying on Hardy and our sister court=s decisions in Dickerson and Garcia,
we find that, because appellant does not have any constitutional or statutory
reasonable expectation of privacy in his blood-alcohol test results obtained
for medical purposes following an accident, he does not have standing to
complain that his test results were not obtained in compliance with the grand
jury subpoena process.  See Garcia,
95 S.W.3d at 526-27; Dickerson, 965 S.W.2d at 31.  Accordingly, we overrule appellant=s second issue and affirm the
judgment of the trial court.  

 

 

 








/s/        Paul C. Murphy

Senior Chief Justice

 

 

Judgment rendered
and Opinion filed May 22, 2003.

Panel consists of
Chief Justice Brister, and Justices Fowler and Murphy.[9]

Publish C Tex.
R. App. P. 47.2(b).

 











[1]           We
interpret the substance of appellant=s
argument to complain that the State improperly obtained his blood test results
by failing to properly comply with the grand jury subpoena process.





[2]           State
v. Hardy, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) (holding that the
interest in safeguarding the privacy of medical records is not strong enough to
require protection of blood-alcohol test results from tests taken by hospitals
solely for medical purposes after a traffic accident).





[3]           Dickerson
v. State, 965 S.W.2d 30, 31 (Tex. App.CHouston
[1st Dist.] 1998), pet. dism=d,
improvidently granted, 986 S.W.2d 618
(Tex.
Crim. App. 1999) (holding that in the absence of any constitutional or
statutory reasonable expectation of privacy, a defendant has no standing to
complain of defects in the grand jury subpoena process).





[4]           Appellant
contends the regulations provide that the State may not obtain medical records
with a grand jury subpoena unless it complies with the relevant requirements of
obtaining such a subpoena under state law.





[5]           45
C.F.R. '' 160.102, 160.103 (2002).





[6]           Health
care provider means a provider of services as defined in 42 U.S.C.
1395x(u).  45 C.F.R. '160.103.  The
term Aprovider of services@ means a
hospital.  42 U.S.C.A. '1395x(u) (West 1992 & Supp. 2002).





[7]           See
discussion pertaining to first and fourth issue.





[8]           See
discussion pertaining to first and fourth issue.





[9]           Senior
Chief Justice Paul C. Murphy sitting by assignment.