**Clayton Harper TAPP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–02–00655–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 22, 2003.

Rehearing Overruled July 10, 2003.

Brian W. Wice, Houston, for appellants.

Kevin P. Keating, Houston, for appellees.

Panel consists of Chief Justice BRISTER, and Justices FOWLER and MURPHY.*

* Senior Chief Justice Paul C. Murphy sitting by assignment.

## OPINION

PAUL C. MURPHY, Senior Chief Justice (Assigned).

Clayton Harper Tapp appeals a conviction for Driving While Intoxicated on the grounds that the trial court erred in denying his motion to suppress his blood test results because: (1) the disclosure of the results was not obtained in compliance with the grand jury subpoena process and the results were admitted in violation of article 38.23 of the Code of Criminal Procedure and in violation of the privacy regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and (2) the use of a grand jury subpoena to obtain the results constituted an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution. We affirm.

### Factual and Procedural Background

On November 10, 2001, appellant was involved in a motorcycle accident and taken to Memorial Hermann Hospital. At the hospital, Deputy Cantwell noted that appellant had a strong odor of alcohol on his breath and slurred speech. According to Deputy Cantwell, appellant admitted to drinking eight beers and a couple of shots before driving his motorcycle. On November 16, 2001, Deputy Cantwell obtained a grand jury subpoena to obtain appellant's medical records from the hospital. The blood test results revealed that appellant had .18% alcohol in his blood stream. At the time the subpoena was issued, there was no criminal proceeding pending against appellant. On November 30, 2001, appellant was charged with driving while intoxicated.

Appellant filed a motion to suppress the blood test results. The trial court held a hearing but denied his motion to suppress. Thereafter, appellant pleaded guilty to the misdemeanor offense of driving while intoxicated. Pursuant to a plea agreement, the trial court assessed appellant's punishment at 180 days confinement in the Harris County Jail, probated for one year, and a fine of $400. Appellant appeals his conviction raising four issues.

## Argument

### Standing

■ In his first issue, appellant argues the trial court erred in denying his motion to suppress his blood test results because the disclosure of the results was not obtained in compliance with the grand jury subpoena process and the results were admitted in violation of article 38.23 of the Code of Criminal Procedure.[1] Specifically, appellant claims (1) the grand jury subpoena was a sham and not legitimate as there was no actual grand jury investigation pending in this case, (2) the Code of Criminal Procedure does not provide for the issuance of a grand jury subpoena *duces tecum*, (3) the State failed to apply to the district court for a subpoena *duces tecum*, and (4) the State failed to properly return appellant's medical records to the foreman of the grand jury or the District Clerk.

Recently, the First Court of Appeals addressed a similar issue in *Garcia v. State*, 95 S.W.3d 522 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The facts of *Garcia* are very similar to the facts of the present case. *See id.* at 523. Specifically, in *Garcia*, the defendant's blood was drawn at a hospital for purposes of medical treatment after he had been involved in a traffic accident. *Id.* Later, pursuant to a grand jury subpoena, an investigating officer obtained the defendant's medical records. *Id.* No criminal proceedings were pending against the defendant at the time the subpoena was issued and charges against him were initiated only after his medical records were obtained by subpoena. *Id.* After the trial court overruled his motion to suppress evidence of the blood-alcohol level, the defendant pleaded no contest. *Id.*

Relying on the Court of Criminal Appeals' holding in *Hardy*[2] and its earlier decision in *Dickerson*,[3] the court held that, because a defendant does not have any constitutional or statutory reasonable expectation of privacy in blood-alcohol test results obtained for medical purposes following an accident, he does not have standing to complain of any defects in the grand jury subpoena process. *Id.* at 526–27. Agreeing with our sister court, we conclude that appellant lacks standing to complain that his test results were not obtained in compliance with the grand jury subpoena process. Thus, we overrule appellant's first issue.

In his fourth issue, appellant asserts that the trial court erroneously denied his

1. We interpret the substance of appellant's argument to complain that the State improperly obtained his blood test results by failing to properly comply with the grand jury subpoena process.

2. *State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim.App.1997) (holding that the interest in safeguarding the privacy of medical records is not strong enough to require protection of blood-alcohol test results from tests taken by hospitals solely for medical purposes after a traffic accident).

3. *Dickerson v. State*, 965 S.W.2d 30, 31 (Tex. App.-Houston [1st Dist.] 1998), *pet. dism'd, improvidently granted*, 986 S.W.2d 618 (Tex. Crim.App.1999) (holding that in the absence of any constitutional or statutory reasonable expectation of privacy, a defendant has no standing to complain of defects in the grand jury subpoena process).

motion to suppress his blood test results because using a grand jury subpoena to obtain the results, absent a showing of probable cause or exigent circumstances, constituted an unreasonable search and seizure and violated article 1, section 9 of the Texas Constitution.

In *State v. Hardy,* the Court of Criminal Appeals held that there is no Fourth Amendment reasonable expectation of privacy that protects blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident. 963 S.W.2d 516, 527 (Tex. Crim.App.1997). Later, the Court further held that article 1, section 9 of the Texas Constitution does not provide more but rather less protection than the Fourth Amendment of the United States Constitution. *Hulit v. State,* 982 S.W.2d 431, 436 (Tex.Crim.App.1998). Therefore, we conclude that the holding in *Hardy* can also be extended to appellant's claim under the Texas Constitution. *See id.; see also Garcia,* 95 S.W.3d at 526 n. 1; *Thurman v. State,* 861 S.W.2d 96, 100 (Tex.App.-Houston [1st Dist.] 1993, no pet.).

We thus hold that, because there is no expectation of privacy in one's blood-alcohol test results under section 9 of our Bill of Rights, appellant lacks standing to assert that using a grand jury subpoena to obtain his blood results constituted an unreasonable search and seizure. We overrule appellant's fourth issue.

### Preemption

■ Next, appellant contends that we must decide whether the privacy regulations, promulgated by the Secretary of Health and Human Services pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPPAA"), overruled the Court of Criminal Appeals' decision in *State v. Hardy,* 963 S.W.2d 516. Arguing that *Hardy* is preempted by federal regulations, appellant asserts that the trial court erred in denying his motion to suppress his blood test results. In particular, appellant claims in his second issue that the results should have been suppressed under article 38.23(a) because the State failed to comply with the grand jury subpoena process and thus improperly obtained his results in violation of the prescribed regulations.[4] Additionally, in his third issue, appellant argues that, with the restoration of a federal privacy right in medical records, the State's failure to obtain his test results pursuant to a valid warrant or a recognized warrant exception constituted an unreasonable search and seizure violating the Fourth Amendment.

On August 21, 1996, Congress enacted HIPAA to "improve portability and continuity of health insurance coverage in the group and individual markets, to combat waste, fraud, and abuse in health care and health care delivery." Pub.L. No. 104–191, 110 Stat. 1936 (1996). Congress also instructed the Secretary of Health and Human Services to promulgate "final regulations" containing "standards with respect to the privacy of individually identifiable health information" should Congress fail to enact such privacy standards within 36 months of the HIPAA enactment. 110 Stat. 2033–34.

On February 13, 2001, the Secretary promulgated final regulations that restrict and define the ability of covered entities, *i.e.* health plans, health care clearinghouses, and health care providers,[5] to divulge

---

4. Appellant contends the regulations provide that the State may not obtain medical records with a grand jury subpoena unless it complies with the relevant requirements of obtaining such a subpoena under state law.

5. 45 C.F.R. §§ 160.102, 160.103 (2002).

patient medical records. However, the initial compliance date for covered entities to comply with these privacy standards was April 14, 2003. 45 C.F.R. § 164.534 (2002). Thus, a hospital, defined as a health care provider,[6] was only required to comply with the regulations after April 14, 2003. In that regard, any action taken during the regulations' pre-enforcement stage cannot constitute a violation of the regulations as compliance is not required or enforceable. *See Ass'n of Am. Physicians & Surgeons, Inc. v. United States Dep't of Health & Human Servs.*, 224 F.Supp.2d 1115, 1123–24 (S.D.Tex.2002) (holding that plaintiffs' action is premature because actual compliance with the regulations is not mandated until April 14, 2003, and finding that adjudicating plaintiffs' claims in the pre-enforcement stage poses a risk of rendering an impermissible advisory opinion). Additionally, any alleged preemption argument raised at the regulations' pre-enforcement stage is premature. *See id.*

In this case, compliance with the promulgated regulations was not yet required. *See* 45 C.F.R. § 164.534. Consequently, appellant's preemption argument is without merit in that any compliance with the regulations was not even mandated. *See Ass'n of Am. Physicians & Surgeons, Inc.*, 224 F.Supp.2d at 1123–24. Therefore, we cannot agree with appellant that the promulgated regulations, while still in their pre-enforcement stage, in effect overruled *Hardy*. Moreover, absent any guidance or instructions to the contrary from the Court of Criminal Appeals, we are compelled to follow existing case law. We thus adhere to standing precedent as set out in *Hardy* and its progeny and proceed to address appellant's second and third issue in accordance therewith.

As we discussed earlier in this opinion,[7] appellant does not have a Fourth Amendment reasonable expectation of privacy that protects blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident. *Hardy*, 963 S.W.2d at 527. Because appellant thus lacks standing to complain that his test results were obtained in violation of the Fourth Amendment, we overrule his third issue. *See id.; see also Garcia*, 95 S.W.3d at 526–27. Furthermore, as noted previously,[8] relying on *Hardy* and our sister court's decisions in *Dickerson* and *Garcia*, we find that, because appellant does not have any constitutional or statutory reasonable expectation of privacy in his blood-alcohol test results obtained for medical purposes following an accident, he does not have standing to complain that his test results were not obtained in compliance with the grand jury subpoena process. *See Garcia*, 95 S.W.3d at 526–27; *Dickerson*, 965 S.W.2d at 31. Accordingly, we overrule appellant's second issue and affirm the judgment of the trial court.

---

6. Health care provider means a provider of services as defined in 42 U.S.C. 1395x(u). 45 C.F.R. § 160.103. The term "provider of services" means a hospital. 42 U.S.C.A. § 1395x(u) (West 1992 & Supp.2002).

7. *See* discussion pertaining to first and fourth issue.

8. *See* discussion pertaining to first and fourth issue.