COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| | | No. 08-10-00025-CR |
| MARTIN LEE CHAVIS, | § | |
| | | Appeal from the |
| Appellant, | § | |
| | | Criminal District Court |
| v. | § | |
| | | of Jefferson County, Texas |
| THE STATE OF TEXAS, | § | |
| | | (TC# 93637) |
| Appellee. | § | |

**O P I N I O N**

In separate cases, Martin Lee Chavis was convicted of delivery of a controlled substance and possession of child pornography. He was ultimately sentenced to serve concurrent five-year terms for the offenses. On appeal, he challenges the denial of a motion to suppress, the sufficiency of the evidence, and the voluntariness of his pleas. We affirm.

In December 2004, Chavis was indicted for delivery of a controlled substance. He pled guilty, and the trial court placed him on deferred adjudication probation for four years. In January 2009, Chavis was indicted for possession of child pornography. Specifically, he was accused of using LimeWire, a peer-to-peer file-sharing program, to download movies depicting child pornography.

At a hearing on Chavis's motion to suppress, Detective Curl of the Beaumont Police Department explained how his investigation led him to Chavis. Curl testified that programs such as LimeWire allow users to access the Gnutella file-sharing network. Peer-to-peer networks are "designed and installed to . . . intentionally share information from a person's computer to

anyone anywhere in the world that's using software that operates on that same network so that people can share music, share movies, share software, share pictures openly across the entire world." Curl stated that when a user runs LimeWire it communicates with a "supernode," by "send[ing] a file up to the supernode automatically that says, 'Hey, I have the following files available for share; and they're on my computer.'" A user can also send a request to the supernode for particular files by title or topic. For example, a user could request a specific song or a type of music. The supernode searches the network to see if any users have the requested file on their computer. Once the file is found, the two computers–"the one who has the file for share and the one that wants the file for share"–communicate directly to accomplish the download. LimeWire also allows users to search on the basis of an IP address. The user can then browse all of the items available for share at that particular address.[1]

In his work investigating child pornography, Curl uses a program called "Phex," which is comparable to LimeWire. Like LimeWire, it is available for anyone to download from the Internet and it allows users to access the Gnutella network.

Curl testified that he received an IP address from a server used by law enforcement to identify computers that have downloaded movies depicting child pornography. Using Phex, he browsed the items available for share at the IP address and identified a file that appeared to contain child pornography. He was unsuccessful at downloading the file from that IP address, so he downloaded it from another computer. Curl then verified that the "SHA1 hash value" of the file he downloaded was the same as that for the file at the target IP address. The SHA1 hash

---

[1] "An IP address is a unique 32-bit-long code number that each computer acquires automatically through its Internet access provider for connecting to the Internet." *Wenger v. State*, 292 S.W.3d 191, 194 n.2 (Tex.App.--Fort Worth 2009, no pet.).

value is a unique identifier. Curl viewed the video and determined that it contained child pornography.

Curl enlisted the district attorney's office to help him find the person associated with the target IP address. An assistant district attorney signed a grand jury subpoena duces tecum directing Time Warner Cable to provide the subscriber's name and address. In response to the subpoena, Time Warner provided Chavis's name and address. With this information, Curl obtained a search warrant for Chavis's house. Twenty-seven movies containing child pornography were found on Chavis's computer.

After the trial court denied Chavis's motion to suppress, Chavis entered an open plea of guilty to possession of child pornography. He also pled true to violating his probation by committing the offense of possession of child pornography. When court convened for sentencing, Chavis's attorney argued that although Chavis was "technically" guilty of possessing child pornography, he deleted the files containing child pornography once he realized what they were. Chavis told the court that he set up his computer to download pornography while he was not present. He would later look to see what had been downloaded and would delete any movies involving children. The trial court announced that he would conduct an evidentiary hearing on Chavis's claims and would "make a punishment decision based on that."

At the commencement of the evidentiary hearing, the judge stated that he was interested in "the degree of [Chavis's] offense." Curl testified that the vast majority of the pornography on Chavis's computer was "adult porn." The movies containing child pornography were found in the recycle bin of the computer and thus had been deleted. Items in the recycle bin could, however, be "restored" so they could be viewed again. Curl claimed that Chavis told him that he

initially used "adult search terms," but he got tired of the results he was getting with those terms and started using other terms, such as "pedo." Chavis told Curl that he understood "pedo" to mean "pedophile." Curl also testified that, based on his examination of Chavis's computer, Chavis had previewed twelve of the movies containing child pornography during the downloading process, but nevertheless allowed them to continue downloading and then viewed them at least one more time. Curl could not determine how long each preview lasted; they could have been five seconds or ten minutes.

Chavis denied telling Curl that he used "pedo" as a search term. He also testified that sometimes the previews failed to reveal that children were involved. Moreover, his cousin was often at his house and thus could have previewed the files while Chavis was at work.

In his first issue, Chavis challenges the denial of his motion to suppress. He argues that Curl violated Article 18.20 of the Texas Code of Criminal Procedure and Section 16.02 of the Texas Penal Code by browsing the files on his computer. He also argues that the grand jury subpoena was not proper.

In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the trial court's determinations of historical fact, but we examine legal conclusions *de novo*. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). When, as in this case, the trial court did not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the court made implicit findings in support of its ruling, as long as the implicit findings are supported by the record. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010). We will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Id*.

Pursuant to Article 18.20 of the Texas Code of Criminal Procedure, an intercepted communication and evidence derived therefrom are inadmissible as evidence if the communication was intercepted in violation of Section 16.02 of the Texas Penal Code. TEX.CODE CRIM.PROC.ANN. art. 18.20, § 2(a)(1)(West 2010). Section 16.02 of the Penal Code makes it a crime to "intentionally intercept[] . . . a[n] . . . electronic communication." TEX.PEN.CODE ANN. § 16.02(b)(1)(West 2011).

Chavis asserts that Curl intentionally intercepted his electronic communications when Curl browsed his computer files. He relies on the statutory definitions of the terms in Section 16.02. The term "electronic communication" refers to "a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system." TEX.CODE CRIM.PROC.ANN. art. 18.20, § 1(15). The word "intercept" means "the aural or other acquisition of the contents of a wire, oral, or electronic communication through the use of an electronic, mechanical, or other device." *Id*. at § 1(3); *see also* TEX.PEN.CODE ANN. § 16.02(a)(incorporating the definitions of "electronic communication" and "intercept" from Article 18.20).

The State argues that Curl did not intercept any electronic communications. It relies on cases that hold that making child pornography available for others to access and download through peer-to-peer file-sharing software qualifies as "dissemination" or "distribution" of the pornography. *See, e.g.*, *Wenger v. State*, 292 S.W.3d 191, 198-99 (Tex.App.--Fort Worth 2009, no pet.). These cases do not address the issue of whether a law enforcement officer intercepts an electronic communication by browsing a person's shared files.

The parties have not cited, and we have not found, any cases interpreting the Texas

statutes in a factual scenario like the one we encounter here. Nevertheless, we are not without guidance. The Federal Wiretap Act's definitions of "electronic communication" and "intercept" are virtually identical to the Texas statutes' definitions of those terms. *See* 18 U.S.C.A. at § 2510(4)(West Supp. 2010)(defining "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device"); *id.* at § 2510(12)(West 2000)(defining "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce"). Accordingly, we may turn to cases interpreting the Federal Wiretap Act for direction. *See Castillo v. State*, 810 S.W.2d 180, 183 (Tex.Crim.App. 1990); *Meyer v. State*, 78 S.W.3d 505, 508-09 (Tex.App.--Austin 2002, pet. ref'd).

"The federal courts have consistently held that electronic communications, in order to be intercepted, must be acquired contemporaneously with transmission and that electronic communications are not intercepted within the meaning of the Federal Wiretap Act if they are retrieved from storage." *O'Brien v. O'Brien*, 899 So. 2d 1133, 1136 (Fla.Dist.Ct.App. 2005); *see also Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3rd Cir. 2003); *United States v. Steiger*, 318 F.3d 1039, 1046-49 (11th Cir. 2003); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461-62 (5th Cir. 1994); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 556-58 (S.D.N.Y. 2008). *Contra United States v. Szymuszkiewicz*, 622 F.3d 701, 705-06 (7th Cir. 2010)(indicating that the Federal Wiretap Act does not have a timing requirement).

The *Steiger* case has a factual scenario somewhat similar to this case. There, an anonymous hacker e-mailed the Montgomery, Alabama Police Department, stating that he had identified the Defendant Steiger as a child molester. *Steiger*, 318 F.3d at 1041-42. The hacker had tricked Steiger into downloading a "trojan horse" program, which allowed the hacker to enter into Steiger's computer through the Internet. *Id*. at 1044. The hacker sent the police several e-mails containing information he had obtained, including Steiger's name and IP address, pictures depicting child pornography, and the identities of folders on Steiger's computer where pornographic pictures were stored. *Id*. at 1042. The Eleventh Circuit determined that the hacker did not intercept any electronic communication in violation of the Federal Wiretap Act because a "contemporaneous interception–*i.e.*, an acquisition during 'flight'–is required to implicate the Wiretap Act with respect to electronic communications." *Id*. at 1048-49.

The court noted that its holding comported with the ordinary meaning of "intercept," which connotes interrupting a communication in progress or before arrival. *Id*. at 1048. The court also relied on a difference in the statutory definitions of "wire communication" and "electronic communication." Before the Federal Wiretap Act was amended to address electronic communications, federal courts had interpreted "intercept" "to mean the acquisition of a communication contemporaneous with transmission." *Id*. at 1047. When Congress amended the Act, it redefined the term "wire communication" to include storage, but did not include storage in the definition of "electronic communication." *Id*. at 1048. Thus, a wire communication could be intercepted while in storage, but an electronic communication could not. *Steiger*, 318 F.2d at 1048; *accord Steve Jackson Games*, 36 F.3d at 461-62 ("Congress' use of the word 'transfer' in the definition of 'electronic communication,' and its omission in that definition of the phrase

-7-

'any electronic storage of such communication' . . . reflects that Congress did not intend for 'intercept' to apply to 'electronic communications' when those communications are in 'electronic storage.'"). When Congress later deleted the reference to stored communications from the definition of "wire communication," courts presumed that it intended to require contemporaneous acquisition for the interception of both wire and electronic communications. *See Steiger*, 318 F.3d at 1048.

Like the Federal Wiretap Act, Section 18.20 previously defined "wire communication" to include communications "in electronic storage." *See* Act of June 19, 2009, 81st Leg., R.S., ch. 1237, § 1, 2009 TEX.GEN.LAWS 3952 (deleting "electronic storage of a wire communication" from the definition of "wire communication"). The similarities in the legislative histories of the federal and state statutes suggest that the terms "electronic communication" and "intercept" in Section 18.20 should be interpreted as those terms have been interpreted by the federal courts. Under that interpretation, Curl did not intercept Chavis's electronic communications when he browsed the shared files residing on Chavis's computer, because the files were not "in flight" at the time.

It makes particular sense to use the federal courts' interpretation in this case. Based on Curl's testimony, the trial court could have found that by placing files in the shared folder of his computer, Chavis was effectively saying "to anyone anywhere in the world" with the necessary software, "Hey, I have [these] files available for share." It would seem strange to interpret the statutes to prohibit law enforcement from using publicly available software to view files that were made available for viewing to everyone else in the world.

Chavis also argues that his motion to suppress should have been granted because the

grand jury subpoena duces tecum was improper. According to Chavis, a grand jury does not have the power to issue a subpoena duces tecum and, even if it had such power, it did not follow the proper procedure to subpoena Time Warner Cable. The State counters that the subpoena was lawful and that Chavis does not have standing to challenge the subpoena. Agreeing with the State's second argument, we find it unnecessary to consider Chavis's complaints about the subpoena.

In *Tapp v. State*, the appellant raised arguments similar to those raised by Chavis regarding a grand jury subpoena duces tecum. *See* 108 S.W.3d 459, 461 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd). A law enforcement officer procured a grand jury subpoena for the appellant's blood test results, which then formed the basis for charging the appellant with driving while intoxicated. *Id*. at 460. The Fourteenth Court of Appeals held that the appellant did not have standing to complain of any defects in the grand jury subpoena process because he did not have any constitutional or statutory reasonable expectation of privacy in the blood test results. *Id*. at 461; *accord Garcia v. State*, 95 S.W.3d 522, 526-27 (Tex.App.--Houston [1st Dist.] 2002, no pet.).

Here, the grand jury subpoena duces tecum was used to discover the subscriber information for the IP address where Curl had found the file containing child pornography. Chavis did not have a reasonable expectation of privacy in this information. *See United States v. Bynum*, 604 F.3d 161, 164 (4th Cir.)(noting that every federal court that has addressed the issue has held that there is no reasonable expectation of privacy in subscriber information), *cert. denied*, 130 S. Ct. 3442, 177 L.Ed.2d 347 (2010); *Russo v. State*, 228 S.W.3d 779, 802 (Tex.App.--Austin 2007, pet. ref'd)(stating that there is no Fourth Amendment protection against

the disclosure of subscriber information). Accordingly, he does not have standing to complain of defects in the process used to obtain the information. Chavis's first issue is overruled.

In his second issue, Chavis argues that the evidence was factually insufficient to support his conviction for possession of child pornography. He contends that his statements at the sentencing hearings demonstrate that his possession of child pornography was not intentional. The State argues that the evidence was factually sufficient. The Texas Court of Criminal Appeals recently overruled its decisions providing for factual sufficiency review and held that the legal sufficiency standard is the only standard that a reviewing court should apply in determining the sufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010). Since *Brooks* was decided after the preparation of the parties' briefs, we could construe Chavis's second issue as a challenge to the legal sufficiency of the evidence. *See, e.g., Mauldin v. State*, No. 08-09-00028-CR, 2010 WL 4523761, at *1 (Tex.App.--El Paso Nov. 10, 2010, pet. ref'd)(not designated for publication). However, neither the legal nor the factual sufficiency standard applies when a defendant knowingly and voluntarily pleads guilty to a felony. *Keller v. State*, 125 S.W.3d 600, 604 (Tex.App.--Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted*, 146 S.W.3d 677 (Tex.Crim.App. 2004).

Although Chavis's conviction cannot be reviewed for legal or factual sufficiency, Article 1.15 of the Texas Code of Criminal Procedure requires that a guilty plea be supported by evidence. *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex.Crim.App. 2009). A sworn written statement that specifically admits culpability or that generally acknowledges that the allegations are true will suffice to support a guilty plea. *Menefee*, 287 S.W.3d at 13. Here, Chavis signed a statement that provided, "I have read the charging instrument and my attorney has explained it to

me and I committed each and every element alleged. . . . I am guilty of the offense . . . . I swear that all of the foregoing . . . is the truth, so help me God." The statement was sworn before a deputy district clerk. This statement amounts to a judicial confession and is sufficient to support the guilty plea. *See Staggs v. State*, 314 S.W.3d 155, 159-60 (Tex.App.--Houston [1st Dist.] 2010, no pet.)(holding that a judicial confession in which the defendant admitted that he "committed each and every element" was sufficient to satisfy Article 1.15); *Houston v. State*, 286 S.W.3d 604, 614 (Tex.App.--Beaumont 2009, pet. ref'd)(holding that a statement composed of virtually identical language was a judicial confession, which precluded a challenge to the State's proof), *cert. denied*, 130 S. Ct. 1082, 175 L.Ed.2d 906 (2010). Chavis's second issue is overruled.

In his third issue, Chavis attacks his plea of guilty to possession of child pornography and his plea of true to violating his probation. Relying on his statements at the sentencing hearings, Chavis argues that he did not understand the *mens rea* element of the child pornography charge. Since his guilty plea was not knowingly made, Chavis argues that his plea of true was also unknowing because it was based on his mistaken belief that he violated his probation by committing the child pornography offense.

We recently addressed a similar claim. *See Hall v. State*, No. 08-08-00111-CR, 2010 WL 654157 (Tex.App.--El Paso Feb. 24, 2010, no pet.)(not designated for publication). Like Chavis, Hall relied on testimony from a punishment hearing to establish that she did not know that she must have committed the offense intentionally or knowingly. *Hall*, 2010 WL 654157, at *3. We concluded that Hall forfeited her right to raise the voluntariness of her plea on appeal because she did not ask the trial court to withdraw the plea. *Id*. at *3-4; *accord Douglas v. State*, No.

-11-

08-09-00027-CR, 2010 WL 2196082, at *3 (Tex.App.--El Paso May 28, 2010, pet. ref'd)(not designated for publication); *see also Serna v. State*, Nos. 05-08-01709-CR & 05-08-01710-CR, 2010 WL 188574, at *2 (Tex.App.--Dallas Jan. 21, 2010, no pet.)(not designated for publication)(holding that appellant forfeited the right to raise the voluntariness of his pleas of true because he did not raise voluntariness at the revocation hearing).

Our conclusion was based on the reasoning of *Mendez v. State*, 138 S.W.3d 334 (Tex.Crim.App. 2004). In *Mendez*, the appellant argued that the trial court should have *sua sponte* withdrawn his guilty plea because his testimony raised a question as to his guilt. The Court of Criminal Appeals held that the appellant failed to preserve this issue because he did not seek to withdraw his plea in the trial court. *Mendez*, 138 S.W.3d at 339, 350. There was no suggestion in *Mendez* of any error in the proceedings leading up to the guilty plea. *Id*. at 350.

Before Chavis pled guilty, he and his attorney signed a document entitled, "Written Plea Admonishments." This document includes the admonishments required by Article 26.13 of the Texas Code of Criminal Procedure. Chavis stated in the document that he understood the admonishments and was aware of the consequences of his plea. As in *Mendez*, there is no suggestion of any error in the proceedings leading up to the guilty plea or the true plea. From the statements made by counsel and the judge, it is clear that the purpose of the testimony taken at the sentencing hearings was to allow the judge to determine the severity of Chavis's offense for purposes of punishment. Chavis never requested to withdraw the pleas, even after his testimony at the sentencing hearings. Accordingly, based on the authorities cited above, Chavis forfeited his right to raise the voluntariness of his pleas.

One final issue not raised by the parties must be addressed. In both cases, the trial court

signed a certification of Chavis's right to appeal. However, the certifications do not appear to contain Chavis's signature. *See* TEX.R.APP.P. 25.2(d). Instead, it appears that a court clerk simply wrote Chavis's name and address onto the certification. We therefore ORDER Chavis's attorney to send him a copy of this opinion and our judgment, to notify Chavis of his right to file a *pro se* petition for discretionary review, and to inform him of the pertinent deadlines. *See* TEX.R.APP.P. 48.4, 68. Counsel is further ORDERED to comply with the additional requirements of Rule 48.4.

The judgments of the trial court are affirmed.


August 26, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)