

# IN THE
# TENTH COURT OF APPEALS

No. 10-11-00166-CR

**THE STATE OF TEXAS,**

**Appellant**

 **v.**

**LARRY DANIEL JEWELL,**

**Appellee**

**From the County Court at Law No. 2
Ellis County, Texas
Trial Court No. 1010722CR**

## MEMORANDUM OPINION

Larry Jewell was involved in a one-car motor vehicle accident in Ellis County. He was taken by helicopter ambulance to Parkland Hospital in Dallas County, where he received medical treatment. About ten days later, a DPS trooper obtained a "grand jury subpoena" (duces tecum) from the County and District Attorney for Ellis County for Jewell's medical records from Parkland, and pursuant to the subpoena duces tecum, obtained all of Jewell's medical records from Parkland.

Six months later, Jewell was charged by information with the offense of driving while intoxicated. The State filed in the case all of Jewell's Parkland medical records (totaling 117 pages), which included his blood-alcohol test results, with a business-records affidavit. Jewell filed a detailed motion to suppress the blood-alcohol test results in his medical records, arguing that he had a reasonable expectation of privacy in his medical records, including the blood-alcohol test results, and that the State obtained his medical records illegally because the grand jury subpoena was invalid. *See* TEX. CODE CRIM. PROC. ANN. art. 20.11 (West 2005) (providing that grand jury subpoena for out-of-county witness must be made upon written application to district court).

The trial court initially ruled orally that the medical records that the State had filed were inadmissible. The State then caused the issuance of a subpoena duces tecum by the County Clerk of Ellis County on February 15, 2011 for Jewell's medical records from Parkland, and the State obtained and filed the records again (this time totaling 183 pages) with a business-records affidavit. Jewel filed an objection to the State's second medical-records filing and a second motion to suppress that reiterated the grounds in his first motion and that also complained that the State had not sought the trial court's permission to obtain the records.

The trial court issued detailed findings of fact and conclusions of law that also contained a discussion of the applicable law. It ruled that Jewell had standing to complain of the State's obtaining his medical records because HIPAA, which was enacted after *State v. Hardy*, 963 S.W.2d 516 (Tex. Crim. App. 1998), gives individuals a reasonable expectation of privacy in their medical records, including blood-alcohol test

results, and because the State sought and obtained more than just Jewell's blood-alcohol test results. The trial court also ruled that the grand jury subpoena was defective and was a "sham." It granted Jewell's motion to suppress, ordering that none of Jewell's medical records from Parkland were admissible and that no person's testimony could be based on the Parkland records. The State appeals, asserting two issues.

## Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). We give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and on (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

## Findings of Fact and Conclusions of Law

Among the trial court's dozens of findings and conclusions are:

- On October 28, 2009, a trooper obtained a "grand jury subpoena" from the District Attorney of Ellis County to further an investigation of Jewell's motor vehicle accident. The "grand jury subpoena" was for any and all medical records of Jewell. No actual grand jury was aware of the issuance of the subpoena, and no actual grand jury was in session or involved in the issuance of the "grand jury subpoena."

- No information related to the motor vehicle accident or to Jewell was ever presented to an actual grand jury, before or after the issuance of the subpoena. The "grand jury subpoena" was not related to any actual grand jury activity of an actual grand jury. The subpoena was not returnable to nor returned to any actual grand jury. The subpoena did not require the witness to appear before any actual grand jury or at any specific time or place, and the witness did not appear before the grand jury or present the evidence to the grand jury.

- The "grand jury subpoena" was for an out-of-county witness. There was no application to any district court for the out-of-county subpoena by the foreman or attorney representing the State. The subpoena encouraged the delivery of the evidence directly to the investigating officer, and the evidence appears to have been given directly to the investigating officer. Article 24.01 of the Code of Criminal Procedure does not provide for the witness to surrender documents to an officer instead of making an appearance before a court or a grand jury.

- The evidence was never presented to an actual grand jury, and the evidence obtained by the "grand jury subpoena" was not kept secret; to the contrary, it was filed publicly as a public record by the District Attorney. The criminal charge was filed after obtaining the medical records and in reliance on the medical records. The State obtained the medical records based on the alleged "grand jury subpoena."

- The "grand jury subpoena" issued by the District Attorney was defective because it did not meet the legislative requirements, and it was a sham because no actual grand jury was involved in any way with the subpoena.

- The use of a "grand jury subpoena" in this case does not comply with state law. The State illegally obtained the health care information (Jewell's medical records), which were obtained in violation of the Fourth, Fourteenth and/or Ninth Amendments; in violation of HIPAA; and in violation of the Texas Constitution.

- "In this Court's view, the use of the grand jury subpoena is unlawful unless it is used as part of a legitimate grand jury's exercise of legislative authority. The prosecutor and investigator stepped outside the scope of their authority in abusing the power of the grand jury subpoena for their own purpose independent of the grand jury and the grand jury process."

**Standing**

In its first issue, the State asserts that the trial court erred in holding that Jewell had standing to complain of the use of the grand jury subpoena to obtain his blood-test results. In *Hardy*, the Court of Criminal Appeals held that there is no Fourth Amendment reasonable expectation of privacy protecting blood-alcohol results from tests taken by hospital personnel solely for medical purposes after a traffic accident. 963 S.W.2d at 527.

Because there is no Fourth Amendment reasonable expectation of privacy protecting such blood-alcohol test results, a defendant lacks standing to contest the legality of law enforcement's acquisition of those blood-alcohol test results. *E.g.,*

*Murray v. State,* 245 S.W.3d 37, 41-42 (Tex. App.—Austin 2008, pet. ref'd). Our sister courts have followed *Hardy,* even after enactment of HIPAA regulations on medical-records privacy, holding that HIPAA did not preempt the narrow holding in *Hardy* on blood-alcohol test results. *See, e.g., Kennemur v. State,* 280 S.W.3d 305, 311-12 (Tex. App.—Amarillo 2008, pet. ref'd); *Kirsch v. State,* 276 S.W.3d 579, 586-87 (Tex. App.—Houston [1st Dist.] 2008, *aff'd on other grounds,* 306 S.W.3d 738 (Tex. Crim. App. 2010); *Murray,* 245 S.W.3d at 39-42. Some of our sister courts have noted that they were constrained to follow *Hardy* absent contrary guidance from the Court of Criminal Appeals. *Kennemur,* 280 S.W.3d at 312 ("we are constrained to follow existing law under *Hardy* absent any guidance or instructions to the contrary from the Court of Criminal Appeals"); *Murray,* 245 S.W.3d at 42 ("Because we have concluded that *Hardy* remains binding on this Court, absent contrary guidance or instruction from the court of criminal appeals, we are compelled to follow the existing case law on this precise issue."); *Ramos v. State,* 124 S.W.3d 326, 337 (Tex. App.—Fort Worth 2003, pet. ref'd) ("absent any guidance or instructions from the court of criminal appeals, we are compelled to follow existing case law"); *Tapp v. State,* 108 S.W.3d 459, 463 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("absent any guidance or instructions to the contrary from the Court of Criminal Appeals, we are compelled to follow existing case law").

We are under the same constraint of *Hardy* and thus must reverse the trial court's suppression ruling as to the admissibility of the blood-test results and any testimony

about them.  Jewell lacked standing to complain of the use of the grand jury subpoena to obtain his blood-test results.  We sustain in part issue one as to the blood-test results.

In *Hardy*, the Court of Criminal Appeals specifically limited its holding to blood-test results.  *Id.* at 524 n.8 ("We limit the scope of our Fourth Amendment holding to the blood test results.").  Based on HIPAA,[1] which was enacted after *Hardy*, we hold that Jewell has a reasonable expectation of privacy in his medical records (other than his blood-test results) and thus has standing to contest how the State obtained them.[2] HIPAA does have numerous exceptions for law enforcement's obtaining medical records,[3] including the use of a grand jury subpoena,[4] but as the trial court's findings and conclusions ably demonstrate, the grand jury subpoena used to obtain Jewell's medical records did not even substantially comply with article 20.11, the provision applicable for an out-of-county witness.  *See Boyle v. State*, 820 S.W.2d 122, 125, 127-30 (Tex. Crim. App. 1989) (holding that issuance of grand jury material witness attachment under articles 20.11 and 24.15 was illegal and stating, "We do hold that the procedure utilized in placing the appellant under arrest pursuant to a grand jury material witness attachment was a pretext, subterfuge, and deceptive artifice intentionally employed to

[1] The Health Insurance Portability and Accountability Act, commonly known as HIPAA, led to the promulgation of federal regulations to protect the privacy of individual medical records.  *Kennemur*, 280 S.W.3d at 311 n.4 (citing 45 C.F.R. pts. 160 & 164); *Kirsch*, 276 S.W.3d at 586.  Under HIPAA regulations, a person's medical information cannot be disclosed by a covered entity without consent unless expressly permitted by HIPAA.  *Kennemur*, 280 S.W.3d at 311 n.5 (citing 45 C.F.R. § 164.502).

[2] In its brief, other than pointing to HIPAA's law-enforcement exceptions, the State does not explain or argue that Jewell had no reasonable expectation of privacy in his medical records other than in his blood-test results.

[3] 45 C.F.R. § 164.512(f).

[4] 45 C.F.R. § 164.512(f)(1)(ii)(B).

circumvent the principles and tenets of the Fourth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 9 of the Texas Constitution."), *overruled on other grounds by Gordon v. State,* 801 S.W.2d 899 (Tex. Crim. App. 1990) (plurality op.); *see also Guardiola v. State,* 20 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Thurman v. State,* 861 S.W.2d 96, 101 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (Cohen, J., concurring).

Article 20.11 provides:

> Sec. 1. The foreman or the attorney representing the State may, upon written application to the district court stating the name and residence of the witness and that his testimony is believed to be material, cause a subpoena or an attachment to be issued to any county in the State for such witness, returnable to the grand jury then in session, or to the next grand jury for the county from whence the same issued, as such foreman or attorney may desire. The subpoena may require the witness to appear and produce records and documents. An attachment shall command the sheriff or any constable of the county where the witness resides to serve the witness, and have him before the grand jury at the time and place specified in the writ.
>
> Sec. 2. A subpoena or attachment issued pursuant to this article shall be served and returned in the manner prescribed in Chapter 24 of this code.
>
> A witness subpoenaed pursuant to this article shall be compensated as provided in this code.

TEX. CODE CRIM. PROC. ANN. art. 20.11.

The State's brief makes no argument that the grand jury subpoena was valid; it only makes the assertion that there is "no controlling authority that holds that any of the procedures used by the State in this case violate the code of criminal procedure or are unconstitutional." *Boyle* and the plain language of article 20.11 contradict the State's

assertion. *See Guardiola,* 20 S.W.3d at 225 ("The assistant district attorney in this case similarly abused the grand jury subpoena power by issuing the subpoena at the sole request of the investigators. … The Texas Legislature has not chosen to vest police officers with subpoena power, and it would circumvent that legislative judgment to allow the police to make use of the grand jury process in order to do indirectly what they cannot do directly.").

The trial court did not err in concluding that Jewell's medical records (other than his blood-test results) that were obtained by the invalid grand jury subpoena should be suppressed. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). We thus overrule in part issue one.

### Other Legal Means

As noted previously, after the trial court's initial suppression ruling, the State obtained all of Jewell's medical records from Parkland a second time with the issuance of a subpoena duces tecum by the County Clerk.[5] In issue two, the State contends that, even if the trial court correctly ruled that the evidence acquired with the grand jury subpoena should be suppressed, the trial court erred in ruling that the State could not legally obtain Jewell's Parkland medical records for use at trial.[6]

Jewell asserts that the State appears to be invoking the inevitable-discovery doctrine, which is not an exception to article 38.23's exclusionary rule. *See Pitonyak v. State,* 253 S.W.3d 834, 849 (Tex. App.—Austin 2008, pet. ref'd) (citing *State v. Daugherty,*

---

[5] Jewell makes no argument that this process was illegal.

[6] Because we have already ruled that the trial court erred in suppressing the blood-test results, this discussion concerns only the State's acquiring the remainder of Jewell's medical records.

931 S.W.2d 268, 273 (Tex. Crim. App. 1996)). We disagree. Rather, the State appears to be asserting that there is an attenuation of taint, which is part of the "fruit of the poisonous tree" doctrine.

> Under the "fruit of the poisonous tree" doctrine, all evidence derived from the exploitation of an illegal detention, search, or seizure must be suppressed, unless the State shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation. *Wolf v. State,* 137 S.W.3d 797, 805 (Tex. App.—Waco 2004, no pet.) (citing *United States v. Portillo-Aguirre,* 311 F.3d 647, 650 (5th Cir. 2002)). Evidence can become so attenuated from the illegal detention to dissipate the taint of the prior illegality. *See St. George v. State,* 197 S.W.3d 806, 824 (Tex. App.—Fort Worth 2006, pet. granted) (en banc) ("both the federal and state exclusionary rules allow the admission of otherwise tainted evidence if the connection between the initial illegality and the discovery of the challenged evidence has become so attenuated as to dissipate the taint of the prior illegality") (citing *Wong Sun,* 371 U.S. at 487, 83 S.Ct. at 417; and *Johnson v. State,* 871 S.W.2d 744, 750 (Tex. Crim. App. 1994)).

*Bell v. State,* 233 S.W.3d 583, 587-88 (Tex. App.—Waco 2007, pet. dism'd, untimely filed).

We held above that Jewell lacked standing to contest the State's acquisition of his blood-test results with the invalid grand jury subpoena. We therefore hold that, because the blood-test results are not technically tainted by illegality, the State could legally acquire the remainder of Jewell's medical records with a valid subpoena duces tecum. Issue two is sustained.

## Conclusion

We affirm in part the trial court's May 3, 2011 order suppressing Jewell's Parkland medical records obtained by the grand jury subpoena, but we reverse the order as to Jewell's blood-test results and as to Jewell's Parkland medical records

acquired with the County Clerk's subpoena duces tecum dated February 15, 2011. We

remand this case to the trial court for further proceedings consistent with this opinion.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Chief Justice Gray concurs in the judgment with a note)*
      (Justice Scoggins concurring with opinion, joined by Chief Justice Gray)
Affirmed in part and reversed in part and remanded
Opinion delivered and filed January 31, 2013
Do not publish
[CR25]


      *(Chief Justice Gray concurs in the judgment to the extent that it reverses the trial court's judgment suppressing the 183 pages of medical records obtained by a subpoena duces tecum. A separate opinion will not issue. However, he notes that because there is no suggestion that anything in the 117 pages obtained by the grand jury subpoena was not also included in the 183 pages, we need not address the first issue and he does not join that discussion.)